UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re: <br><br> **MIDWEST CHRISTIAN VILLAGES, INC.** *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 24-42473 <br><br> **(Jointly Administered)** |
| **MIDWEST CHRISTIAN VILLAGES, INC.** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **SLFAQ, LLC,** <br><br> Defendant. | Adv. Proc. No. |

### COMPLAINT

The above-captioned debtors and debtors in possession ("Debtors"), by and through their undersigned counsel, assert the following claim against Defendant SLFAQ, LLC and allege as follows:

---

[1] The address of the Debtors headquarters is 2 Cityplace Dr, Suite 200, Saint Louis, MO 63141-7390. The last four digits of the Debtors' federal tax identification numbers are: (i) Midwest Christian Villages, Inc. [5009], (ii) Hickory Point Christian Village, Inc. [7659], (iii) Lewis Memorial Christian Village [3104], (iv) Senior Care Pharmacy Services, LLC [1176], (v) New Horizons PACE MO, LLC [4745], (vi) Risen Son Christian Village [9738], (vii) Spring River Christian Village, Inc. [1462], (viii) Christian Homes, Inc. [1562], (ix) Crown Point Christian Village, Inc. [4614], (x) Hoosier Christian Village, Inc. [3749], (xi) Johnson Christian Village Care Center, LLC [8262], (xii) River Birch Christian Village, LLC [7232], (xiii) Washington Village Estates, LLC [9088], (xiv) Christian Horizons Living, LLC [4871], (xv) Wabash Christian Therapy and Medical Clinic, LLC [2894], (xvi) Wabash Christian Village Apartments, LLC [8352],(xvii) Wabash Estates, LLC [8743], (xviii) Safe Haven Hospice, LLC [6886], (xix) Heartland Christian Village, LLC [0196], (xx) Midwest Senior Ministries, Inc. [3401], (xxi) Shawnee Christian Nursing Center, LLC [0068], and (xxii) Safe Haven Hospice, LLC [6886].

## The Parties

1. On July 16, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. Prepetition, the Debtors operated a mix of independent, assisted living, and skilled nursing campuses in 10 locations across the Midwest, serving over 1,000 residents. During the pendency of these chapter 11 cases, the Debtors have consummated sale transactions for all of the Debtors' operating facilities.

3. Defendant SLFAQ, LLC (the "Defendant") is a limited liability company registered in Delaware with its principal place of business in New York.

## Jurisdiction

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (M) and (O) as it relates to the administration of the bankruptcy estate, the turnover of property of the estate, the sale of property of the estate and an order pertaining thereto, and other proceedings affecting and concerning the liquidation of the assets of the estate.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

## Background Facts

6. On April 1, 2025, this Court entered its *Order Granting Debtors' Motion for Order Under 11 U.S.C. § 323 and 105(a) and Fed. R. Bankr. P. 2002, 6004, 9006, and 9019 Establishing Procedures for Remaining Asset Sales* (the "Sale Order") [Docket No. 675].

7. The Sale Order set forth the procedures for the sale of the Debtors' remnant assets, including providing benefits and protections to purchasers of the assets. It also required any transaction be approved by UMB Bank, N.A., as bond trustee (the "Bond Trustee").

8. On March 11, 2025, the Debtors began negotiations with Defendant regarding the sale of certain remnant assets.

9. On April 15, 2025, Defendant proposed a purchase price of $1,250,000 for certain remnant assets.

10. On May 1, 2025, following the Debtors' agreement to sell the subject assets for $1,250,000, Defendant reduced its proposed purchase price to $750,000. On May 12, 2025, Defendant increased its proposed purchase price to $800,000.

11. In connection with their reduced purchase price, Defendant modified the list of assets to be included in the purchase to: UPL Support, Investment Funds – FNMA and ZLF III, HPCV, IRS Levy, Caring Communities, CPCV Recapture Agreement, and malpractice accounting claim (collectively, the "Purchased Assets").

12. The Debtors, in consultation with the Bond Trustee, countered with a proposed purchase price of $1,000,000 on May 13, 2025, and negotiations continued to bridge the gap between $800,000 and $1,000,000 for the Purchased Assets.

13. On May 13, 2025, the Debtors wrote to Defendant that "I believe we can close the deal with verbal approval from the Bond Trustee today at $900K."

14. Thereafter on May 13, 2025, Defendant responded that "We will increase to $850K. Can you get them down an additional $50K? We are very close. Note that our bid includes [list of Purchased Assets]."

15. That same day, given Defendant's prior purchase price reduction, the Debtors requested confirmation that Defendant's $850,000 offer for the Purchased Assets was not subject to any contingencies, holdbacks or indemnities, which Defendant confirmed.

16. Defendant immediately inquired about the acceptability of its $850,000 and again confirmed the offer had no contingencies: "Any indication on the acceptability of our bid? It would be great to start preparing the APA to facilitate a quick closing, potentially even before the end of next week. It should be straightforward given the "no contingencies, no offsets, no holdbacks, indemnities, etc."

17. Thereafter, Debtors requested Defendant to supply their version of an asset purchase agreement.

18. Defendant supplied its form of asset purchase agreement to Debtors on May 14, 2025.

19. Debtors' counsel prepared a form of asset purchase agreement customized for Defendant's bid here based on the model provided by Defendant.

20. On May 15, 2025, Debtors confirmed that a written asset purchase agreement was being reviewed by the Bond Trustee and official committee of unsecured creditors (the "Committee"), and Defendant asked, "Did they give verbal approval on the price I know we were going back and forth so was confused on that part."

21. The Debtors confirmed that the transaction — specifically Defendant's $850,000 offer for the Purchased Assets without any contingencies, holdbacks or indemnities — had been accepted and approved by all parties. To memorialize the agreement between the parties, on May 21, 2025 the Debtors sent the Asset Purchase Agreement, attached hereto as **Exhibit 1**, to Defendant, the form of which agreement had been approved by the Bond Trustee and the Committee.

22. On May 23, 2025, Joseph Sarachek, on behalf of Defendant, responded, "The agreement looks fine. We'll get this done over the weekend." The email response of Defendant is attached hereto as **Exhibit 2**.

23. Despite prompting by Debtors, Defendant delayed in executing the final Asset Purchase Agreement agreed upon by the parties.

24. On May 27, 2025, Freddie Smithson, a principal with Defendant, sent an email to Debtors' counsel stating that "Joe will get the signed documents to you tomorrow." The Smithson email is attached hereto as **Exhibit 3**.

25. On June 3, 2025, Defendant sent a signed version of the Asset Purchase Agreement, with one unilateral modification: an ambiguous price adjustment "in the amount of Eight Hundred and Fifty Thousand Dollars ($600,000)." No other changes were made to the previously circulated Asset Purchase Agreement. The unilaterally modified Asset Purchase Agreement is attached hereto as **Exhibit 4**.

26. The Debtors do not and did not agree to the price reduction and such change does not alter the agreed-to terms of the transaction.

## Count I.  Breach of Contract

27. The Debtors repeat and incorporate herein by reference the allegations set forth in paragraphs 1 through 27.

28. The Debtors accepted Defendant's offer of $850,000 for the Purchased Assets without any contingencies, holdbacks or indemnities, thereby establishing a meeting of the minds on all material terms of the transaction.

29. The Debtors presented a completed and final Asset Purchase Agreement to Defendant on May 21, 2025, which was in all respects consistent with the parties' agreement.

30. Defendant confirmed the Asset Purchase Agreement was acceptable on May 23, indicating that the "agreement looks fine," and four days later indicating that it would "get the signed documents to you tomorrow."

31. The Debtors have otherwise performed all of their obligations, covenants and conditions necessary to consummate the transaction.

32. Defendant has breached the contract by refusing to consummate the transaction as agreed to by the parties.

33. As a direct result of Defendant's breach, Debtors are now attempting to mitigate their damages and sell the Purchased Assets to third-parties, but the Debtors have and will suffer damages to the extent they are unable to obtain compensation of at least $850,000 for the Purchased Assets, and for the additional time and cost associated with such resale efforts.

**Prayer for Relief**

WHEREFORE, the Debtors pray for judgment against Defendant for damages up to and including:

- the $850,000 purchase price agreed upon by the parties, subject only to any offset or deductions for proceeds received from third parties on account of subsequent sales of the Purchased Assets consummated prior to judgment (if any);
- Other damages associated with Defendant's breach of contract, including carrying costs, remarketing costs, and legal costs incurred with respect to the resale of the Purchased Assets;
- Pre-judgment and post-judgment interest; and
- And for all other and further relief as the Court deems just and proper.

[*Remainder of page intentionally left blank*]

**DENTONS US LLP**

/s/Stephen O'Brien

Stephen O'Brien #43977MO
**DENTONS US LLP**
211 N Broadway Ste 3000
St. Louis, MO 63102
Telephone: (314) 241-1800
stephen.obrien@dentons.com

Robert E. Richards (admitted *pro hac vice*)
Samantha Ruben (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive, Suite 5900
Chicago, Illinois 60606-6404
Telephone: (312) 876-8000
robert.richards@dentons.com
samantha.ruben@dentons.com

– and –

David A. Sosne #28365MO
**SUMMERS COMPTON WELLS LLC**
903 South Lindbergh Blvd., Suite 200
St. Louis, Missouri 63131
Telephone: (314) 991-4999
dsosne@scw.law

*Co-Counsel to the Debtors and Debtors-in-Possession*