# **<u>EXHIBIT 4</u>**

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "Agreement"), dated as of June 3, 2025, is made by and between the bankruptcy estates of Midwest Christian Villages, Inc. and related debtors and debtors in possession (collectively referred to herein as "Debtor" or "Seller"), and **SLFAQ, LLC** ("Purchaser").

## WITNESSETH:

**WHEREAS**, on July 16, 2024, Debtor filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Missouri ("Court"), assigned Lead Case No. 24-42473 (Jointly Administered) ("Chapter 11 Cases"); and

**WHEREAS**, at the time of the execution of this Agreement and continuing into the future, there may be property of the Debtor's estates remaining as of the date that the transaction contemplated by this Agreement closes (the "Closing Date"), consisting of (i) certain assets set forth on Exhibit A-1 attached hereto and (ii) other known or unknown assets or claims which have not been previously sold, assigned, or transferred described on Exhibit A-2 attached hereto (collectively, the "Remnant Assets"); provided, in each case, that the Remnant Assets shall not include the Excluded Assets (as defined herein); and

**WHEREAS**, the Remnant Assets specifically **exclude**: (a) cash or securities held at the time of this Agreement in the Seller's bank and investment accounts; (b) the purchase price and other rights under the pending Asset Purchase Agreement, bank accounts, reserve accounts and other assets of the bankruptcy estates of Wabash Estates and Washington Village Estates; (c) the purchase price and other rights under the pending Asset Purchase Agreement, bank accounts, pharmaceuticals and other assets of the bankruptcy estate of Senior Care Pharmacy; (d) professional and winddown officer retainers or prepayments and funds on hand and advance payments related to the Chapter 11 Cases and winddown budgets; (e) ERC tax credits and receipt of funds related to the same; (f) funds held in escrow related to the Estate of Hopp; (g) funds related to the 457(b) retirement plan; (h) equity in Procure Advantage; (i) equity in vehicles financed or leased from Enterprise; (j) any cause of action against current or former officers, directors or agents of any Debtor; (k) avoidance actions under the Bankruptcy Code; (l) assets of non-debtor affiliates; (m) assets or proceeds previously received by any Debtor or non-debtor affiliate; (n) leases and contracts rejected to date or to be rejected which are not specifically listed as Known Assets in Exhibit A hereto; and (o) the Purchase Price (as hereinafter defined) to be delivered pursuant hereto (all of the foregoing, collectively, the "Excluded Assets"); and

**WHEREAS**, on April 1, 2025, the Court entered that certain ORDER GRANTING DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C. §§ 363 AND 105(a) AND FED. R. BANKR. P. 2002, 6004, 9006, AND 9019 ESTABLISHING PROCEDURES FOR REMAINING ASSET SALES [Docket No. 675] (the "Remnant Sale Order");

**WHEREAS**, the Debtor has solicited bids for the Remnant Assets and has determined that the final bid of Purchaser is the highest and best bid received;

**WHEREAS**, Seller has the power and authority to sell and assign all right, title and interest in and to the Remnant Assets to Purchaser, including, but not limited to the proceeds thereof and has given the required notices to UMB Bank N.A., as trustee (the "Bond Trustee"), the Official Committee of the Unsecured Creditors ("Committee") and the Office of the United States Trustee ("UST") of the proposed sale; and

**WHEREAS**, Purchaser understands that the Seller intends to pursue a structured dismissal of some or all of the pending Chapter 11 Cases in 2025 and may start the process of state law dissolution by

2026 for one or more of the Debtor entities.

**NOW THEREFORE**, in consideration of the promises and mutual undertakings herein contained, Seller and Purchaser agree as follows:

1. **Purchase Price.** The Purchase Price shall be good funds in the amount of Eight Hundred and Fifty Thousand Dollars ($600,000) payable within two (2) business days following the date that is five (5) calendar days after the date that Seller has served notice of the sale on counsel to the Committee and the UST in accordance with paragraph 3 of the Remnant Sale Order.

2. **Assignment of Remnant Assets.** Seller hereby irrevocably and unconditionally sells, assigns, transfers and conveys to Purchaser all of the Seller's right, title and interest under, in and to the Remnant Assets, as well as any and all claims and rights related to the Remnant Assets, including, without limitation, all cash, securities, instruments and other property that may be paid or issued in conjunction with the Remnant Assets and all amounts, interest, and costs due under the Remnant Assets, other than, in each case, the Excluded Assets.

3. **Authority to Sell.** The sale of the Remnant Assets by the Seller is made pursuant to the authority vested in the Seller pursuant to the Remnant Sale Order.

4. **Payments Received on Remnant Assets.** Seller further agrees that any payments received by Seller on account of any Remnant Assets shall constitute property of the Purchaser to which the Purchaser has an absolute right, and that Seller will promptly deliver such payment to Purchaser at Purchaser's address set forth below. Seller agrees to use reasonable efforts to forward to Purchaser notices received with respect to any Remnant Assets.

5. **Seller's Representations and Warranties.** In consideration of Purchaser's agreements herein and to induce Purchaser to enter into this Agreement, Seller represents and warrants to Purchaser that Seller has full lawful right, title, power and authority to enter into this Agreement and to convey Seller's interest to Purchaser in the Remnant Assets as is set forth in this Agreement.

**EXCEPT AS SPECIFICALLY SET FORTH HEREIN, THE SELLER SELLS, ASSIGNS, AND TRANSFERS THE REMNANT ASSETS TO THE PURCHASER "AS IS, WHERE IS" WITHOUT ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER, WHETHER EXPRESS, IMPLIED OR IMPOSED BY LAW.**

6. **Purchaser's Representation and Warranties.** Purchaser represents and warrants to Seller that Purchaser has full lawful right, title, power and authority to enter into this Agreement and to acquire Seller's interest in the Remnant Assets as set forth in this Agreement. Purchaser has sufficient funds to pay the Purchase Price in full in cash on the Closing Date.

7. **Free and Clear Sale.** The sale of Remnant Assets shall be free and clear of any liens, claims, or encumbrances pursuant to 11 U.S.C. § 363(f) and the Remnant Sale Order. The Purchase Price shall be paid by wire transfer to the Bond Trustee pursuant to the direction of the Seller on the Closing Date.

8. **No Assumption of Liabilities.** Notwithstanding any other provision of this Agreement, the parties agree that Purchaser is acquiring only the Remnant Assets and rights and interests related thereto, and that Purchaser is not acquiring or assuming, nor shall it be deemed to have acquired or assumed, any liabilities or obligations, including lien obligations, of Seller or its affiliates of any kind or nature, whatsoever, whether known or unknown, existent or future, arising out of, or in connection with, the Remnant Assets, except as may otherwise expressly be provided herein.

9. **Documents of Assignment.** From time to time upon request from Purchaser, Seller shall execute and

3

deliver to Purchaser such documents reasonably requested by Purchaser to evidence and effectuate the transfer contemplated by this Agreement in a form reasonably acceptable to the parties hereto. Purchaser shall reimburse Seller for its reasonable costs associated with such action and compliance.

10. **Limited Power of Attorney.** Solely with respect to the Remnant Assets, and to the extent permitted by law, Seller hereby irrevocably appoints Purchaser as its true and lawful attorney and authorizes Purchaser to act in Seller's stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Remnant Assets herein assigned. Seller grants unto Purchaser full authority to do all things necessary to enforce the transfer of the Remnant Assets to Purchaser and its rights thereunder pursuant to this Agreement.

11. **Entire Agreement.** This Agreement embodies the entire agreement and understanding between Seller and the Purchaser and supersedes any and all prior agreements and understandings with respect to the subject matter hereof. This Agreement may not be amended or in any manner modified unless such amendment or modification is in writing and signed by both parties.

12. **Benefits and Binding Effect.** All provisions contained in this Agreement or any document referred to herein or relating hereto shall inure to the benefit of and shall be binding upon the respective successors and assigns of Seller and the Purchaser.

13. **Governing Law.** This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware.

14. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument, and copies of execution signatures send via pdf shall be equivalent to original signatures.

**THIS AGREEMENT** has been duly executed as of the day and year first above written.


**SLFAQ LLC.**


By:_____
Name: Joseph E. Sarachek
Its: Managing Director

Address *(for regular mail and mail forwarding)*: 670 White Plains Road Scarsdale, NY 10583


**MIDWEST CHRISTIAN VILLAGES, INC. et al.**


By: _____
Name: Shawn O'Conner
Its:  Chief Restructuring Officer

Address:  1033 Demonbreun St.
Suite 300
Nashville, TN   37203

## EXHIBIT A-1

**Known Assets**

1.      Fifteen (15) units of Ziegler Link-Age Fund III, LP
2.      Interests in Caring Communities, which provides insurance for various not for profit client
3.      The FNMA Investment
4.      UPL funds from Jackson Schneck Hospital.
5.      Lennar Homes Recapture Agreement at Crown Point Christian Village
6.      Indemnity Claim Against Richter Billing
7.      Release of IRS Levy at Hickory Point Christian Village.


## EXHIBIT A-2

**Unknown Assets**

All state sales tax, workers comp. insurance, and other refunds, due now or in the future, excluding the Excluded Assets.